689 P.2d 603 (1984)
The CITY OF AURORA, By and on Behalf of the PEOPLE of the State of Colorado, Petitioner,
v.
Shannon Noel RHODES, Respondent.
No. 82SC174.
Supreme Court of Colorado, En Banc.
October 22, 1984.
*605 Patrick E. Kowaleski, Stephen R. Ruddick, Aurora, for petitioner.
*606 Ralph B. Rhodes, Denver, for respondent.
Eileen A. Muench, Patricia C. Tisdale, Arvada, for amicus curiae City of Arvada.
QUINN, Justice.
The District Court of Arapahoe County reversed a judgment of conviction for careless driving entered by the municipal court of the City of Aurora because of the municipal court's refusal to exclude from the jury those prospective jurors who resided within the city limits but did not live within that part of the city located in Arapahoe County, the county in which the offense allegedly took place. We granted Aurora's petition for certiorari to consider whether a petition for rehearing filed within fourteen days after a district court's reversal of a municipal court judgment of conviction tolls the thirty-day period for filing a petition for certiorari review in this court, and also whether in a prosecution for a municipal ordinance violation all the jurors must reside in the county where the offense was committed even though the territorial boundaries of the municipality encompass lands in more than one county. Because we conclude that Aurora's petition for certiorari was timely filed in this court and that its procedure for summoning and selecting jurors was not prohibited by either article II, section 16 of the Colorado Constitution or the provisions of the Uniform Jury Selection and Service Act, §§ 13-71-101 to -122 (1973 & 1983 Supp.), we reverse the judgment of the district court.

I.
The City of Aurora is a home rule municipality, with a population of approximately 180,000, that encompasses lands in both Adams County and Arapahoe County.[1] Aurora's municipal code establishes a municipal court with jurisdiction over all cases arising out of the provisions of the code, Aurora City Code §§ 25-1 and 25-2 (1979), and further requires that a verbatim record be made of proceedings and evidence in municipal court trials by either electrical devices or stenographic means. Aurora City Code § 25-4 (1979). Aurora's municipal court is a "qualified municipal court of record," § 13-10-102(3), 6 C.R.S. (1973),[2] located in the Arapahoe County portion of the city, with the result that appeals from municipal court convictions are taken to the Arapahoe County District Court and are resolved on the basis of briefs and the record of the municipal court proceedings. § 13-10-116(2), 6 C.R.S. (1973); C.M.C.R. 237(b), Crim.P. 37.[3] The municipal code authorizes "[t]he presiding judge or his designated jury commissioner [to] issue a venire for a jury by the issuance of a summons or writ for jury service by mailing the summons or writ by first class mail... to the usual place of abode of the juror at least five (5) days before the day on which the jurors are required to appear." Aurora City Code § 25-16 (1979).
*607 On April 14, 1981, Shannon Noel Rhodes was cited for careless driving in violation of the municipal code. Aurora City Code § 37-108 (1979). The alleged offense occurred in that part of Aurora located in Arapahoe County. Careless driving is punishable by a jail sentence of not more than ninety days, a fine of not more than $300, or both. Aurora City Code § 1-14 (1979).
Rhodes entered a not guilty plea and demanded a jury trial. On the day of trial Rhodes, relying on that provision of the Uniform Jury Selection and Service Act which requires a prospective juror to be "a resident of the county," § 13-71-109(2)(a), 6 C.R.S. (1973), moved to exclude from the jury panel all prospective jurors who, although living within the municipal boundaries of Aurora, did not reside in that part of the city located in Arapahoe County. The municipal court denied Rhodes' motion. Citing section 13-71-102, 6 C.R.S. (1973), which provides that "all persons selected for jury service shall be selected at random from a fair cross section of the population of the area served by the court," the court ruled that the "area served by the court" meant the entire municipality of Aurora. During jury selection Rhodes also challenged for cause three prospective jurors on the ground that they did not reside in that part of Aurora located in Arapahoe County. These challenges were denied. The six-person jury ultimately sworn was comprised of two jurors who resided in that part of Aurora located in Adams County and four jurors who resided in that part of Aurora located in Arapahoe County. The jury returned a guilty verdict to careless driving on July 30, 1981, and the court imposed a fine of thirty-five dollars.
Rhodes appealed her conviction to the Arapahoe County District Court, alleging that the municipal court erred in failing to exclude from the jury panel those persons who resided in that part of Aurora located in Adams County. The district court on March 15, 1982, issued a written opinion reversing Rhodes' conviction and granting her a new trial. The district court held that the Uniform Jury Selection and Service Act (UJSSA), §§ 13-71-101 to -122, 6 C.R.S. (1973 & 1983 Supp.), was applicable to Rhodes' trial. The court based this determination on section 13-10-114(2), 6 C.R.S. (1973), which was enacted in 1969, two years prior to the adoption of the UJSSA, as part of legislation relating to municipal courts. Section 13-10-114(2) provides that "[i]n municipalities having a population of five thousand or more, juries shall be selected from a jury list as is provided for courts of record." Because the UJSSA requires the jury commissioner of each county to maintain a master list of potential jurors and a master jury wheel, §§ 13-71-106 and -107, 6 C.R.S. (1973), and because section 13-71-109(2)(a), 6 C.R.S. (1973), states that a prospective juror is disqualified if he or she is not "a resident of the county," the district court ruled that Aurora had not summoned jurors in accordance with the UJSSA and that the three prospective jurors who were on the jury panel for Rhodes' trial but who did not reside in that part of Aurora located in Arapahoe County were disqualified from jury service. In its written ruling the court stated, in pertinent part, as follows:
The City of Aurora lies partially within Adams County and partially within Arapahoe County. Prospective jurors summoned to the Municipal Court of the City of Aurora, for jury trial of an alleged violation of the City Code that occurs in Arapahoe [C]ounty, must be drawn from a master wheel of jurors who are residents of Arapahoe [C]ounty, in accordance with the Uniform Jury Selection and Service Act.
The denial by the trial court of the defendant's challenges for cause of the three prospective jurors, who resided in Adams [C]ounty, was error.
The City of Aurora filed a petition for rehearing on March 29, 1982, and the district court, on April 12, 1982, entered the following written order:
THIS MATTER came on for consideration of appellee's petition for rehearing, and the Court having considered said petition and being fully advised in the premises,

*608 IT IS ORDERED that said petition for rehearing, is hereby denied.
Aurora thereafter filed its petition for certiorari in this court on May 11, 1982, which was twenty-nine days after the denial of Aurora's petition for rehearing and fifty-seven days after the district court's reversal of Rhodes' conviction.
Rhodes asserts that Aurora's petition for certiorari is untimely because it was filed in excess of thirty days after the district court's judgment on March 15, 1982. Aurora, in contrast, argues that its petition was timely in that it was filed within thirty days after the district court's denial of its petition for rehearing. Aurora also claims that its procedures for summoning and selecting jurors from within its municipal boundaries do not violate the constitutional right to a trial "by an impartial jury of the county or district in which the offense is alleged to have been committed," Colo. Const. art. II, § 16, and that its procedures are not prohibited by the UJSSA. We address these respective claims separately.

II.
Relying on C.A.R. 52(a), which requires that a petition for writ of certiorari to review a judgment of the district court be filed not later than thirty days after the rendition of the final judgment, Rhodes argues that Aurora's petition for certiorari should be dismissed as untimely. We conclude that Aurora's petition was timely filed.
There is no provision in statute or appellate rule expressly addressing the filing of a petition for rehearing in connection with an appeal to the district court from a municipal court judgment. Section 13-10-116(2), 6 C.R.S. (1973), for example, merely authorizes an appeal from a judgment of a municipal court of record to the district court of the county in which the municipal court of record is located. The practice and procedure for such an appeal is the same as provided by section 13-6-310, 6 C.R.S. (1973), which governs appeals to the district court from final county court judgments. Further review of the district court judgment may be sought by a certiorari proceeding in this court pursuant to the Colorado Appellate Rules. § 13-6-310(4), 6 C.R.S. (1973). Although C.A.R. 40(a) does authorize the filing of a petition for rehearing within fourteen days after the entry of judgment, the provisions of C.A.R. 40(b) are cast in terms that might well be interpreted to limit the rule to rehearing petitions filed in the supreme court or the court of appeals.[4] Thus, while the above provisions do not specifically authorize the filing of a petition for rehearing directed to a district court's appellate review of a municipal court judgment, none of them expressly prohibit the filing of such a request.
A petition for rehearing directed to a district court's review of a municipal court judgment serves a useful function. By affording the district court the opportunity to correct a mistake of law, the expense and delay incident to further appellate proceedings can be averted. See Norris v. Kelsey, 60 Colo. 297, 152 P. 1167 (1915). We hold, therefore, that a party seeking an appellate review in the district court of a municipal court judgment should be entitled to file a petition for rehearing unless the district court by express order dispenses with the filing of the petition. In the absence of such an order of dispensation, the district court will retain jurisdiction over the appeal for a period of fourteen days after the entry of judgment, unless the time is shortened or enlarged by order of court; and if no petition for rehearing is filed within this period, the district court should then issue its mandate to the municipal court on the day following *609 the expiration of the filing period. See C.A.R. 41.[5] When a petition for rehearing is timely filed in the district court, the district court judgment will not become final for purposes of the thirty-day filing period for a writ of certiorari under C.A.R. 52(a) until such time as the district court denies the petition for rehearing.
In this case the district court did not dispense with the filing of a petition for rehearing, and Aurora filed its petition on March 29, 1982, which was on the fourteenth day after the district court's reversal of the municipal court judgment. Aurora's petition for rehearing was denied on April 12, 1982. Aurora thereafter filed in this court a petition for a writ of certiorari on May 11, 1982, which was within the thirty-day time period of C.A.R. 52(a). Aurora's petition for certiorari was therefore timely filed in this court.

III.
We next consider whether Aurora's procedures for summoning and selecting jurors from its entire municipal boundaries can be reconciled with the constitutional right to a jury trial as guaranteed in Colorado. Article II, section 16 of the Colorado Constitution provides that in criminal prosecutions the accused shall have a right to a trial "by an impartial jury of the county or district in which the offense is alleged to have been committed." We are satisfied that Aurora's procedures comported with Rhodes' constitutional right to trial by an impartial jury of the district in which the offense allegedly occurred.

A.
There are two reasons why the constitutional right to a jury trial as guaranteed by article II, section 16 of the Colorado Constitution is applicable to this case. First, Rhodes had a statutory right to a jury trial. The offense of careless driving was punishable by ninety days imprisonment, a $300 fine, or both. Aurora City Code § 1-14 (1979). In view of the penalty provisions applicable to this ordinance violation, careless driving qualified as a petty offense under section 16-10-109(1), 8 C.R.S. (1978), which states:
For the purposes of this section, "petty offense" means any crime or offense classified as a petty offense or, if not so classified, which is punishable by imprisonment other than in the state penitentiary for not more than six months, or a fine of not more than five hundred dollars, or by both such imprisonment and fine, and includes any violation of a municipal ordinance or offense which was not considered a crime at common law. (emphasis added).[6]
Section 13-10-114(1), 6 C.R.S. (1973), provides that "[i]n any action before [a] municipal court in which the defendant is entitled to a jury trial by ... the general laws of the state, such party shall have a jury upon request."
*610 Although Rhodes' right to a jury trial was not constitutionally mandated, Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Austin v. City and County of Denver, 170 Colo. 448, 462 P.2d 600 (1970), the legislative decision to grant a jury trial in cases of municipal ordinance prosecutions requires that municipalities adhere to constitutional guidelines in implementing this right. See Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (state not obligated to provide appellate review of criminal convictions, but once it does, it may not do so in a manner that violates rights to equal protection and due process); see also J. Nowak, R. Rotunda & J. Young, Constitutional Law 549 (2d ed. 1983) (when state provides governmental benefits, it must do so in accordance with constitutional limitations). Therefore, the state constitutional provision granting an accused the right to a trial by jury of the "district" in which the offense is alleged to have been committed applies in this case.
The second reason for the applicability of the constitutional right to a jury trial is the counterpart provision of the Home Rule Amendment, Colo. Const. art. XX, § 6, which states that "[a]ny act in violation of the provisions of ... any ordinance [enacted by a home rule city or town pursuant to its charter] shall be criminal and punishable as such when so provided by any statute now or hereafter in force." A defendant prosecuted for the violation of a municipal ordinance having a state statutory counterpart must be afforded basic criminal procedural protections. City of Greenwood Village v. Fleming, 643 P.2d 511 (Colo.1982); Canon City v. Merris, 137 Colo. 169, 323 P.2d 614 (1958). At the time of Rhodes' prosecution, the counterpart statutory provision to Aurora's municipal careless driving ordinance was section 42-4-1204, 17 C.R.S. (1981 Supp.), which classified careless driving as a Class 2 traffic offense punishable under section 42-4-1501(2)(a), 17 C.R.S. (1981 Supp.), by ninety days imprisonment, a $300 fine, or both.

B.
The essential features of a jury trial lie in interposing between the accused and the accuser the common sense judgment of lay representatives of the community "and in the community participation and shared responsibility that results from that group's determination of guilt or innocence." Williams v. Florida, 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446 (1979). Because communal participation and judgment is inherent in the jury's function, the summoning and selection procedures must adequately provide the accused with a fair opportunity for obtaining a representative cross section of the community on the jury. See People v. Sepeda, 196 Colo. 13, 581 P.2d 723 (1978); Alvarado v. State, 486 P.2d 891 (Alaska 1971).
Aurora's procedure of summoning and selecting jurors from a pool of Aurora residents living in those parts of the city located in both Adams County and Arapahoe County comported with the requirements of article II, section 16 of the Colorado Constitution that the accused be granted a trial by an impartial jury of the "district" in which the municipal ordinance violation allegedly occurred. Although the text of the Colorado Constitution does not explicate the meaning of the term "district," as it does the term "county," see Colo. Const. art. XIV, § 1, nor has case law supplied a definition, it is obvious that the term "district" refers to a governmental area distinct from a county and that a county is not the exclusive geographical unit from which jurors may be drawn. We believe the term "district," as used in article II, section 16, and as applicable to a municipal court prosecution for an ordinance violation in a multi-county municipality, should be interpreted to mean the area served by the municipal court or, in other words, the territorial boundaries of the city.
The construction we adopt herein simply recognizes the somewhat unique characteristics of municipal court jurisdiction. Municipal courts are special courts *611 designed to serve the territorial limits of a city or town in matters arising out of "alleged violations of ordinance provisions of such city or town." § 13-10-104, 6 C.R.S. (1973). Moreover, municipalities may incorporate within an area inclusive of more than one county. § 31-2-101(3)(b)(III), 12 C.R.S. (1977). Construing the term "district" to include the area served by the municipal court, or the territorial boundaries of the city, permits the municipal court to effectively exercise its limited subject matter jurisdiction in those parts of different counties located within the city itself. This construction finds support not only in article VI, section 1 of the Colorado Constitution, which, in vesting judicial power in various courts of the state, provides that "nothing herein contained shall be construed to restrict or diminish the powers of home rule cities and towns ... to create municipal and police courts," but also in article XX, section 6, which expressly permits home rule municipalities to create municipal courts within their territorial limits and to legislate upon the definition and regulation of the court's jurisdiction.
Thus, in a municipal court prosecution for an ordinance violation, the constitutional requirements of article II, section 16 of the Colorado Constitution will be satisfied if jurors are summoned from a pool of persons who reside within the territorial boundaries of the municipality and if the summoning and selection procedures are calculated to provide the defendant with a fair opportunity for obtaining a representative cross section of the municipality on the jury. The mere fact that some of the prospective jurors reside in an area of the city other than the county where the violation allegedly occurred does not impair the defendant's state constitutional right to a trial by jury. On the contrary, drawing jurors from all parts of the municipality actually fosters, rather than curtails, that cross-sectional component of community participation so essential to the effective operation of the jury system. We thus conclude that Aurora could constitutionally summon and select jurors from those parts of Adams County located within its municipal boundaries.

IV.
Having determined that Aurora may constitutionally summon and select jurors from within its entire municipal limits, we now consider whether Aurora's procedures violate the provisions of the Uniform Jury Selection and Service Act (UJSSA). The district court's reversal of Rhodes' conviction proceeded from the premise that section 13-10-114(2), 6 C.R.S. (1973), which states that municipalities having a population of 5,000 or more must select juries from a jury list as provided for courts of record, necessarily meant that Aurora was required to adhere to the provisions of the UJSSA in summoning and selecting the jurors for Rhodes' trial. The district court's reasoning, in our view, was based on a faulty premise.

A.
The UJSSA, §§ 13-71-101 to -122, 6 C.R.S. (1973 & 1983 Supp.), was adopted by the Colorado legislature in 1971. Ch. 215, secs. 1 to 5, 1971 Sess.Laws 867-76. It provides procedures for summoning and selecting jurors in district courts, § 13-71-104(2), 6 C.R.S. (1973), and has been made expressly applicable to jury trials in county courts by section 13-6-308, 6 C.R.S. (1973 & 1983 Supp.). The UJSSA, however, has not been made applicable to municipal courts. Indeed, the Colorado Rules of Jury Selection and Service, which were promulgated to implement the provisions of the UJSSA, recognize that the UJSSA is not applicable to municipal courts. C.R.J.S.S. 1, in this respect, states that "[t]hese rules supplement article 71 of title 13, C.R.S. 1973, and govern jury selection and service in all courts of record, except municipal courts."
Section 13-10-114(2), 6 C.R.S. (1973), on which the district court relied, was enacted in 1969, two years before the adoption of the UJSSA, as part of comprehensive legislation governing the operation of municipal courts in the cities and towns *612 of the state. Ch. 107, secs. 1 to 4, §§ 37-22-1 to -23, 1969 Sess.Laws 273-78 (now §§ 13-10-101 to -125, 6 C.R.S. (1973 & 1983 Supp.)). This legislation was enacted because the general assembly believed that the right to a trial by jury for petty offenses was of such vital interest to the people of the state that it should be made a matter of statewide concern. § 13-10-101, 6 C.R.S. (1973).[7] Part of this municipal court legislation, as noted above, directs municipalities having a population of 5,000 or more, such as Aurora, to select juries "from a jury list as is provided for courts of record." § 13-10-114(2), 6 C.R.S. (1973). That the general assembly intended to include municipal courts within the "courts of record" category is obvious from the chapter title of the 1969 municipal court legislation, which reads "Courts of Record." See Colo. Const. art. V, § 21. Moreover, section 13-10-102(3), 6 C.R.S. (1973), defines a qualified municipal court of record as follows:
"Qualified municipal court of record" means a municipal court established by, and operating in conformity with, either local charter or ordinances containing provisions requiring the keeping of a verbatim record of the proceedings and evidence at trials by either electric devices or stenographic means, and requiring as a qualification for the office of judge of such court that he has been admitted to, and is currently licensed in, the practice of law in Colorado.
Finally, Rhodes' appeal to the district court is a virtual concession that the Aurora Municipal Court is a "court of record," because appeals from nonqualified municipal courts are taken to the county court, where the case is tried de novo. § 13-10-116(1), 6 C.R.S. (1973).
Since the provisions of the UJSSA are not applicable to municipal courts, it follows that section 13-10-114(2), 6 C.R.S. (1973), which requires municipal courts to select juries "from a jury list as is provided for courts of record," refers not to the UJSSA but to other statutes and rules relating to jury selection in municipal courts. Section 13-10-112, 6 C.R.S. (1973), which was also enacted as part of the 1969 municipal court legislation, provides as follows:
The municipal judge of any municipal court has all judicial powers relating to the operation of his court, subject to any rules of procedure governing the operation and conduct of municipal courts promulgated by the Colorado supreme court. The presiding municipal judge of any municipal court has authority to issue local rules of procedure consistent with any rules of procedure adopted by the Colorado supreme court.
Rule 257(a) of the Colorado Municipal Court Rules authorizes municipal courts to adopt rules "for the conduct of proceedings therein which are not inconsistent with these Rules"; and Rule 257(b) states that, "[i]f no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these Rules or with any applicable law." Section 25-16 of the Aurora City Code authorizes the presiding judge or the designated jury commissioner to issue a venire for a jury by the issuance of a summons or writ. The fact that this procedure finds its source in a municipal ordinance rather than a court promulgated rule is of no significance to the validity of the procedure itself. We know of no inconsistency between Aurora's procedure for summoning jurors for jury service in its municipal court and any state statute or supreme court rule governing such matters, nor has Rhodes pointed to any such inconsistency in this appeal. *613 The district court erred, therefore, in holding that those jurors summoned for jury duty in the Aurora Municipal Court must first be selected from a master list and then drawn from a master jury wheel, maintained by the jury commissioner of Arapahoe County, in accordance with sections 13-71-106 and -107 of the UJSSA.

B.
We are left then with the question whether the district court properly concluded that those jurors residing in that part of Aurora located in Adams County were disqualified under section 13-71-109(2)(a), 6 C.R.S. (1973), because they were not residents of the "county." The district court obviously interpreted this statutory provision to mean residents of the county in which the offense was alleged to have been committedin this case, Arapahoe County. We conclude that the district court erred in its interpretation of the term "county" in section 13-71-109(2)(a).[8]
The only statutory provisions which set forth the disqualifications for jury service are those found in section 13-71-109(2), 6 C.R.S. (1973 & 1983 Supp.), which states:
A prospective juror is disqualified to serve on a jury if he:
(a) Is not a citizen of the United States, eighteen years old, and a resident of the county; or
(b) Is unable to read, speak, and understand the English language; or
(c) Is incapable, by reason of his physical or mental disability, of rendering satisfactory jury service, but a person claiming this disqualification may be required to submit a physician's or authorized Christian science practitioner's certificate as to the disability, and the certifying physician or practitioner is subject to inquiry by the court at its discretion; however, no person shall be deemed to be incapable of jury service solely because of impaired vision or hearing in any degree, although the existence of a defect in the visual or auditory functions may be grounds for challenge for cause if the court is satisfied that the challenged person is incapable of performing the duties of a juror in a particular action without prejudice to the substantial rights of the challenging party; or
(d) Does not have the right to vote by reason of a criminal conviction.
Although, as noted previously, the provisions of the UJSSA with respect to summoning juries are not applicable to municipal courts, we nonetheless conclude that the statutory disqualifications for jury service in section 13-71-109(2) should be applied to trials in municipal courts of record.
We reach this conclusion because there are no other references in the Colorado statutes to jury qualifications or disqualifications. If municipalities were free to rewrite the qualifications for jury service in their own courts, the state interest in preserving the integrity of the right to trial by jury for petty offenses, as expressed in section 13-10-101, 6 C.R.S. (1983 Supp.), *614 would be seriously undermined. Moreover, Rule 224(a)(2)(I) of the Colorado Municipal Court Rules states that a juror may be challenged for cause due to the "[a]bsence of any qualification prescribed by statute to render a person competent as a juror." This rule, in our view, implicitly recognizes the applicability of the statutory disqualifications in section 13-71-109(2), 6 C.R.S. (1973 & 1983 Supp.), to jury selection in municipal court trials.
Although these statutory disqualifications for jury service apply to trials in municipal courts of record, we do not interpret the requirement that a juror be "a resident of the county" to mean that, in a municipal court prosecution for an ordinance violation, a prospective juror in a multi-county municipality must reside in that part of the municipality located in the county where the offense was alleged to have been committed. For purposes of the statutory disqualification of section 13-71-109(2)(a), 6 C.R.S. (1973), we hold that a prospective juror summoned to a municipal court for jury duty in the trial of a municipal ordinance violation qualifies as a "resident of the county" as long as he or she resides in that part of the county located within the territorial limits of the municipality. This construction accommodates the multi-county character of the ordinance jurisdiction of some municipal courts by permitting a broadly inclusive venire of prospective jurors from the area served by the court and, at the same time, furthers the legislative goal of standardizing the basic qualifications for jury service in all courts of record in the state. To disqualify municipal residents as jurors merely because they do not live in that part of the municipality located in the county where the offense allegedly occurred could result in a systematic exclusion of a substantial part of the municipality's residents from jury service. We decline to engraft such a rigid restriction on jury service in a multi-county municipal court. The district court erred, therefore, when it held that prospective jurors residing in that part of Aurora located in Adams County were disqualified from jury service in Rhodes' trial.
The judgment is reversed.
NOTES
[1] We are informed by Aurora that there are ten other Colorado municipalities comprised of territory in more than one county.
[2] As we note in Part IV-A, a qualified municipal court of record is a municipal court established pursuant to local charter or ordinance which requires the keeping of a verbatim record of the proceedings in evidence at trial by either electric devices or stenographic means, and requires as a qualification for the office of judge admission to the practice of law in the state of Colorado. § 13-10-102(3), 6 C.R.S. (1973).
[3] Section 13-10-116(2), 6 C.R.S. (1973), states in relevant part:

Appeals taken from judgments of a qualified municipal court of record shall be made to a superior court of the county, if such superior court has been established, or otherwise to the district court of the county in which the qualified municipal court of record is located. The practice and procedure in such case shall be the same as provided by section 13-6-310....
In resolving the appeal, the district court must review "the case on the record." § 13-6-310(2), 6 C.R.S. (1973). Section 13-6-310(1), 6 C.R.S. (1973), allows appeals from final judgments of the county court to the district court for the judicial district in which the county court is located. Rule 237(b) of the Colorado Municipal Court Rules states that appeals from courts of record "shall be in accordance with Rule 37 of the Colorado Rules of Criminal Procedure," which governs appeals from the county court to the district court.
[4] C.A.R. 40(b) provides, in relevant part:

The petition may be typewritten as prescribed in C.A.R. 32(b), and on the front cover there shall be the number and title of the case, the court from which the appeal was taken, the name of the trial judge, the name of the justice or judge who wrote the opinion, and, if in the Supreme Court, shall state whether the decision was en banc; and, if a departmental decision of the Supreme Court, or of a division of the Court of Appeals, the names of the justices or judges participating.
[5] C.A.R. 41 states:

The mandate of the court shall issue fifteen days after the entry of judgment unless the time is shortened or enlarged by order. A certified copy of the judgment and a copy of the opinion of the court, if any, and any direction as to costs shall constitute the mandate, unless the court directs that a formal mandate issue. The timely filing of a petition for rehearing will stay the mandate until disposition of the petition unless otherwise ordered by the court. If the petition is denied, the mandate shall issue on the second day thereafter, exclusive of the day of entry of the order denying the petition, unless the time is enlarged by order for a stay.
[6] Section 16-10-109(1) was amended in 1982, with an effective date of January 1, 1983, to read as follows:

For the purposes of this section, "petty offense" means any crime or offense classified as a petty offense or, if not so classified, which is punishable by imprisonment other than in a correctional facility for not more than six months, or by a fine of not more than five hundred dollars, or by both such imprisonment and fine, and includes any violation of a municipal ordinance or offense which was not considered a crime at common law; except that violation of a municipal traffic ordinance which does not constitute a criminal offense shall not constitute a petty offense. Ch. 173, sec. 6, § 16-10-109, 1982 Colo.Sess. Laws 655. (emphasis added).
[7] Section 13-10-101 was amended in 1982, with an effective date of January 1, 1983, to add the phrase "as defined in section 16-10-109" after the term "petty offense," ch. 173, sec. 3, § 13-10-101, 1982 Colo.Sess.Laws 654-55, so that the statute now reads:

The general assembly finds that the right to a trial by jury for petty offenses, as defined in section 16-10-109, C.R.S.1973, is of vital concern to all of the people of the state of Colorado and that the interests of the state as a whole are so great that the general assembly shall retain sole legislative jurisdiction over the matter, which is hereby declared to be of statewide concern.
[8] The district court's construction of the term "resident of the county" to mean a resident of the county where the offense is alleged to have been committed is certainly a correct construction for trials of violations of state law conducted in the district and county courts. This is so because requiring a prospective juror to be a resident of the county where the violation of state law was allegedly committed is consistent with those statutory venue provisions requiring that criminal actions involving violations of state law "be tried in the county where the offense was committed, or in any other county where an act in furtherance of the offense occurred." § 18-1-202(1), 8 C.R.S. (1978). District courts are courts of general jurisdiction, Colo. Const. art. VI, § 9, and the judicial districts of the state must be bounded by county lines, Colo. Const. art. VI, § 10, with the result that each judicial district is comprised of the territorial limits of one or more undivided counties. §§ 13-5-101 to -123, 6 C.R.S. (1973 & 1983 Supp.). County courts are also established along county lines and have original criminal jurisdiction over violations of state law that constitute misdemeanors or petty offenses. Colo. Const. art. VI, §§ 16 and 17; § 13-6-101, 6 C.R.S. (1973); § 13-6-106(1)(a), 6 C.R.S. (1983 Supp.). The county-line basis for district and county courts, however, does not apply to municipal courts, and, as noted in Part III-B, the territorial boundaries of a municipality may involve lands in two or more counties.