The **PEOPLE** of the State of Colorado, Plaintiff-Appellant,

v.

**Darcy L. TAYLOR, Defendant-Appellee.**

**No. 85SA22.**

Supreme Court of Colorado.

Feb. 17, 1987.

Norman S. Early, Jr., Dist. Atty. Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Donna Skinner Reed, Roger Fraley, Deputy Dist. Attys., Denver, for plaintiff-appellant.

Dill, Dill & McAllister, Robert T. McAllister, Denver, for defendant-appellee.

QUINN, Chief Justice.

The People appeal a judgment of dismissal entered in favor of the defendant, Darcy L. Taylor, by the Denver District Court.[1] The court dismissed charges of unlawful possession of a controlled substance and unlawful possession of eight ounces or more of marijuana on the basis that the prosecution of the defendant for these crimes was barred by the compulsory joinder statute, § 18-1-408(2), 8B C.R.S. (1986). We reverse the judgment of dismissal and remand the case to the district court for further proceedings.

## I.

The defendant was charged in two judicial districts with drug-related offenses based on an investigation conducted by the Drug Enforcement Agency (DEA) in Denver and Steamboat Springs. On June 19, 1984, Rodney Pobar sold one kilogram of cocaine to an undercover agent, Steve Peters, in Steamboat Springs and was immediately arrested by the agent. Pobar cooperated with DEA officers and named the defendant as the source of the cocaine. He told the officers that the defendant kept cocaine in the basement of her home at 1001 South Josephine Street in Denver. After his arrest Pobar, at the request of the officers, made two monitored telephone calls to the defendant's residence. He also provided other information to the officers for use in an application for a search warrant for the defendant's home.

On June 20, 1984, the defendant was arrested in Denver pursuant to a Routt County arrest warrant for the crimes of distribution of cocaine and conspiracy to distribute cocaine. During a search incident to the defendant's arrest, officers found .11 grams of cocaine in her purse. Later that same night, DEA agents and local police officers executed the search warrant for the defendant's residence. During the search the officers seized a small amount of cocaine, nearly eight pounds of marijuana, some hashish, and a psilocybin mushroom.

Based on the results of the search, a complaint/information was filed in the Denver County Court, Second Judicial District, on June 26, 1984. The complaint/information alleged that on June 20, 1984, in Denver, Colorado, the defendant committed the crime of unlawful possession of a schedule II controlled substance (cocaine and psilocin),[2] § 18-18-105, 8B C.R.S. (1986), and the crime of possession of more than eight ounces of marijuana, § 18-18-106, 8B

---

1. Appellate jurisdiction lies in this court pursuant to section 16-12-102, 8A C.R.S. (1986), and C.A.R. 4(b)(2).

2. "Psilocin" or "psyilocyn" is a derivative of psilocybin, which is a schedule I controlled substance, not a schedule II substance as alleged in the information. § 12-22-309(2)(a), 5 C.R.S. (1985).

C.R.S. (1986). The Denver charges were bound over to the Denver District Court for trial.

On July 5, 1984, the defendant was charged in the district court of Routt County, Fourteenth Judicial District, with distribution of cocaine and with conspiracy to distribute cocaine. § 18–18–105, 8B C.R.S. (1986). These charges were based on the defendant's supplying Pobar with the cocaine sold by him to Agent Peters in Steamboat Springs on June 19, 1984. On September 27, 1984, the defendant entered a guilty plea to the conspiracy charge, and the distribution charge was dismissed. In the course of entering her guilty plea, the defendant filed the following signed statement with the Routt County District Court:

If the District Attorney was required to present evidence at trial I admit he could prove the following facts:

During the month of May 1984, I had a number of meetings with Rodney Pobar in Denver, Colorado. Rodney told me he had a buyer who was interested in purchasing kilo quantities of cocaine. I had never before sold a kilo of cocaine but told Rodney that I might be able to obtain a kilo while in Florida purchasing plants for my landscaping business.

The prospective buyer was in fact Agent Steve Peters who was posing as a wealthy individual interested in purchasing large amounts of cocaine. During the month of June 1984, Rodney Pobar contacted me at my home and told me Steve was ready to make a purchase. I flew from Denver to Florida to obtain the cocaine. I returned to my home in Denver on June 19, 1984 and gave Rodney a little less than a kilo of cocaine and a small amount of marijuana.

Rodney told me that the delivery of cocaine was to take place outside of Denver. Later that night he called me and said the delivery was actually made in Steamboat Springs. Rodney further said he would return with the money the next day. I met Rodney and Steve the following evening in Denver to pick up the payment for the cocaine and was placed under arrest. Rodney informed the agents that I still had some cocaine and marijuana in my home. On the night of my arrest the agents searched my purse and home in Denver and seized the remaining amounts of cocaine and marijuana that I possessed.

The next day, September 28, 1984, the defendant pled not guilty to both counts in the Denver case. On October 18, 1984, the defendant moved to dismiss the Denver charges, claiming that the prosecution of these charges was barred by the provisions of § 18–1–408(2), 8B C.R.S. (1986), which prohibits a subsequent prosecution for offenses that are known to the district attorney at the time of the commencement of a prosecution, were committed within the district attorney's judicial district, and are based on the same act or series of acts arising from the same criminal episode. Noting that the statute requires the existence of five factors before the compulsory joinder bar can apply, *e.g., Corr v. District Court,* 661 P.2d 668 (Colo.1983), the district court found that the prosecution of the defendant for the Denver charges was barred because: (1) although the Denver possessory offenses were obviously committed in the Second Judicial District, the Routt County conspiracy was also committed in the Second Judicial District since the overt act in pursuance of the conspiracy was the defendant's transfer of cocaine to Pobar in Denver on June 19, 1984; (2) the defendant was subjected to a prosecution in the Routt County District Court by reason of the filing of the distribution and conspiracy charges in that court; (3) the Denver District Attorney had knowledge of both the Routt County charges and the Denver possessory offenses when the defendant entered her guilty plea to the Routt County conspiracy charge; (4) while the Denver and Routt County charges constituted separate offenses, they arose out of the same criminal episode; and (5) the defendant was previously subjected to a single prosecution by pleading guilty to the

conspiracy charge in the Routt County District Court.

The People claim that the court erred in dismissing the case because, notwithstanding the fact that the conspiracy to distribute cocaine may have been committed in the Second Judicial District, the possessory offenses filed in the Denver District Court were not committed in Routt County, which is part of the Fourteenth Judicial District, but were committed in Denver. For reasons hereinafter discussed, we conclude that the Denver possessory offenses were not subject to the compulsory joinder bar of section 18–1–408(2) and that the district court erred in dismissing the Denver charges.

## II.

Section 18–1–408(2), 8B, C.R.S. (1986), states as follows:

If the several offenses are known to the district attorney at the time of commencing the prosecution and were committed within his judicial district, all such offenses upon which the district attorney elects to proceed must be prosecuted by separate counts in a single prosecution if they are based on the same act or series of acts arising from the same criminal episode. Any such offense not thus joined by separate counts cannot thereafter be the basis of a subsequent prosecution.[3]

■■■ The compulsory joinder bar of this statute extends further than the constitutional guarantee against double jeopardy, which generally is limited to the "same offense."[4] Section 18–1–408(2) prohibits a subsequent prosecution for a different offense when the following factors are present: (1) that the several offenses were committed within the same judicial district; (2) that a prosecution has been initiated

against the offender; (3) that the prosecutor knew of the several offenses at the commencement of the jeopardy stage of the prosecution; (4) that the several offenses arose from the same criminal episode; and (5) that the offender was subjected to a single completed prosecution—that is, a proceeding from the commencement of a criminal prosecution until further prosecution is barred. *Jeffrey v. District Court,* 626 P.2d 631, 637 (Colo.1981); *accord Corr v. District Court,* 661 P.2d 668 (Colo.1983). This case centers on the first element of the compulsory joinder bar, that is, whether the offenses underlying the Routt County prosecution and the Denver District Court prosecution were committed within the same judicial district. We interpret the statutory requirement that the offenses be committed "within his [District Attorney's] judicial district" to mean that the offenses must have been committed within that same judicial district in which the accused had previously been subjected to a completed prosecution before the compulsory joinder bar attaches.

### A.

Our analysis of the compulsory joinder statute proceeds from a consideration of territorial principles relating to the prosecution of criminal cases. These principles find their source in the Colorado Constitution and the statutory law of this state.

■■■ Article II, section 16 of the Colorado Constitution states that "[i]n criminal prosecutions the accused shall have the right to ... a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." The term "district" refers to "a governmental area distinct from a county," *Aurora ex rel. People v. Rhodes,* 689 P.2d 603, 610 (Colo.1984), and obviously

---

3. Crim.P. 8(a) is essentially identical to section 18–1–408(2), 8B, C.R.S. (1986).

4. Although the defendant raised a double jeopardy claim to the Denver prosecution, the district court specifically rejected that claim and concluded that the crime of conspiracy to distribute cocaine required proof of facts different

from those required to prove the possession of a schedule II controlled substance and possession of eight ounces or more of marijuana. *See, e.g., Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *People v. Williams,* 651 P.2d 899 (1982); *People v. Hancock,* 186 Colo. 30, 525 P.2d 435 (1974).

includes a judicial district. The proper venue for the trial of a case requires a determination of where the crime was committed. *See United States v. Cores,* 356 U.S. 405, 407, 78 S.Ct. 875, 877, 2 L.Ed.2d 873 (1958). At common law every offense had only one situs and thus was triable only in that county where the offense was committed. R. Perkins & R. Boyce, *Criminal Law* 40–41 (1982); Perkins, *The Territorial Principle in Criminal Law,* 22 Hastings L.J. 1155, 1157 (1972); Williams, *Venue and the Ambit of the Criminal Law,* 81 Law Q.Rev. 518, 526 (1965). It has been observed that "[s]o stringently was that rule applied, at common law, that where the alleged act was performed in part in one county and in part in another or others, venue was in neither county, and prosecution could not be had at all." *Murtagh v. Leibowitz,* 303 N.Y. 311, 101 N.E.2d 753, 755 (1951). Section 18–1–202(1), 8B C.R.S. (1986), removes the stringent effects of this common law rule by stating that "[e]xcept as otherwise provided by law, criminal actions shall be tried in the county where the offense was committed, or in any other county where an act in furtherance of the offense occurred." While there can be no question that under section 18–1–202 an offense is committed in that county where the causative criminal conduct takes place or the proscribed result occurs, *see Claxton v. People,* 164 Colo. 283, 434 P.2d 407 (1967), the statute further expands the situs of the crime to include any county "where an act in furtherance of the offense occurred." *See People v. Freeman,* 668 P.2d 1371 (Colo.1983).[5]

■ Territorial concepts also remain the dominant theme of constitutional and statutory provisions relating to the authority of a district attorney to prosecute criminal cases. The state is divided into judicial districts, each of which must be formed "of compact territory and ... bounded by county lines." Colo. Const. art. VI, sec. 10.

5. The full text of section 18–1–202, 8B, C.R.S. (1986), is as follows:

(1) Except as otherwise provided by law, criminal actions shall be tried in the county where the offense was committed, or in any other county where an act in furtherance of the offense occurred.

(2) If a person committing an offense upon the person of another is in one county and his victim is in another county at the time of the commission of an act constituting an element of the offense, the offense is committed and trial may be had in either of said counties.

(3) If cause of death is inflicted in one county and death ensues in another county, the offense is committed and the offender may be tried in either county.

(4) Theft of property is committed and the offender may be tried in any county in which he exercised control over the property.

(5) If the commission of an offense commenced outside the state is consummated within this state, the offense is committed and the offender shall be tried in the county where the offense is consummated.

(6) If an offense is committed in or upon any automobile, trailer, railroad car, aircraft, or other vehicle of transportation passing within or over this state, the offense is deemed to have been committed and the offender may be tried in any county through or over which the vehicle of transportation passed.

(7) When multiple crimes are based upon the same act or series of acts arising from the same criminal episode and are committed in several counties, the offender may be tried in any county in which any one of the individual crimes could have been tried.

(8) An inchoate offense is committed and the offender may be tried in any county in which any act which is an element of the offense, including formation of the agreement in conspiracy, is committed.

(9) When a person in one county solicits, abets, agrees, aids, or attempts to aid another in the planning or commission of an offense in another county, the offense is committed and the offender may be tried for the offense in either county, or in any other county in which the principal offense could be tried.

(10) When an offense is committed on the boundary line between two counties, or so close thereto as to be difficult to readily ascertain in which county the offense occurred, the offense is committed and the offender may be tried for the offense in either county.

*See also* Crim.P. 18.

The constitutional and statutory venue provisions are for the benefit of the accused and may be waived. *Vigil v. People,* 135 Colo. 313, 310 P.2d 552 (1957). When these provisions are not waived, however, it is incumbent upon the prosecution to prove the situs of the crime as alleged in the charge. *E.g., People v. Gould,* 193 Colo. 176, 563 P.2d 945 (1977); *Tate v. People,* 125 Colo. 527, 247 P.2d 665 (1952). Venue may be established by circumstantial evidence. *Claxton v. People,* 164 Colo. 283, 434 P.2d 407 (1967).

Article VI, section 13 of the Colorado Constitution provides that "[i]n each judicial district there shall be a district attorney elected by the electors thereof, whose term of office shall be four years." The territorial component basic to judicial districting is also reflected in Colorado's statutory scheme relating to the duties of the district attorney. *See* section 16–5–205(1), 8A C.R.S. (1986) (prosecuting attorney may file information in court having jurisdiction over offense charged); § 16–5–202(1), 8A C.R.S. (1986) (information sufficient if it can be understood therefrom that, *inter alia*, the offense was committed within the jurisdiction of the court or is triable therein). These constitutional and statutory provisions relating to the office of the district attorney clearly demonstrate that the district attorney is vested with authority to initiate criminal prosecutions for crimes committed within the geographical boundaries of the judicial district served by the district attorney. We find nothing in this constitutional or statutory scheme that vests a district attorney with authority to initiate a criminal prosecution for crimes committed outside his judicial district.

■ The same territorial considerations relating to the prosecution of criminal cases also provide the basis for our construction of the compulsory joinder statute. The statutory language of section 18–1–408(2), which requires that the several offenses must have been "committed within his [district attorney's] judicial district," is nothing less than a tacit recognition that a district attorney's authority to initiate a criminal prosecution is limited to crimes committed within the geographical district served by the district attorney. A construction that would extend the compulsory joinder statute to crimes committed in separate judicial districts would lead to absurd results. Under such an interpretation, for example, an offender could prohibit a district attorney from prosecuting him for a crime committed within the judicial district served by that district attorney simply because another district attorney had previously initiated and completed a separate prosecution against the offender in another judicial district for a crime committed in that judicial district but did not join in that earlier prosecution a charge based on a criminal act that was committed outside the territorial limits of the district attorney's prosecutorial authority. We reject such an interpretation as beyond the obvious legislative purpose sought to be achieved by the compulsory joinder statute.

### B.

■ Our construction of the compulsory joinder bar of section 18–1–408(2) is not affected by the fact that a crime charged in a particular judicial district might have been one of a series of criminal acts committed in several judicial districts as part of a single criminal episode. We acknowledge that in several instances where criminal conduct occurs in more than one county, section 18–1–202 fixes the situs of the crime and the place of trial in any one of several counties. *See* note 5 *supra*. However, in those instances where crimes are committed in separate counties but are based upon a series of acts arising from the same criminal episode, section 18–1–202(7) is conspicuously silent on the situs of the crime and merely addresses the place of trial. Section 18–1–202(7) states in this respect as follows:

> When multiple crimes are based upon the same act or series of acts arising from the same criminal episode and are committed in several counties, the offender may be tried in any county in which any one of the individual crimes could have been tried.

■ Since section 18–1–202(7) permits an accused charged with multiple crimes arising from the same criminal episode and committed in several counties to be tried in any county in which any of the individual offenses could have been tried, it can reasonably be presumed that the legislature also intended to permit the filing of charges in either county. We believe, however, that underlying this implied grant of filing authority in section 18–1–202(7) is the limitation that the respective counties to

which the multi-venue provisions are applicable must be located within the same judicial district. By so interpreting section 18–1–202(7) we preserve the territorial limitations underlying the prosecutorial authority of the district attorney and at the same time provide both the defendant and the district attorney the opportunity to avoid the burden of sequential prosecutions for criminal acts arising from the same criminal episode and committed within the same judicial district. Limiting the venue provisions of section 18–2–202(7) to counties within the same judicial district is consistent with other statutory provisions relating to multi-county criminal conduct. Section 16–6–103, 8A C.R.S. (1986), for example, states as follows:

> Where a prosecution has been commenced in one county, the court, for good cause shown, may transfer the proceeding to another county *within the same judicial district* if it is shown that the offense was committed in more than one county *within the same judicial district* and if the court is satisfied that the interests of justice would be served by transferring the action to the other county. (emphasis added).[6]

Thus, while the multi-venue provisions of section 18–1–202(7) provide some degree of flexibility in fixing the place of trial for separate crimes arising out of the same criminal episode so long as such offenses were committed within the same judicial district, they do not enlarge the authority of a district attorney to file charges based on crimes committed outside the territorial boundaries of the judicial district served by the district attorney.[7]

### III.

It is in light of the above principles that we turn to the order of dismissal entered in this case. In ruling that the Denver prosecution was barred by the compulsory joinder statute, the district court stated, in pertinent part, as follows:

> It is basically undisputed from the evidence that the Denver charges were committed within Denver.... As a matter of law, for purposes of filing and compulsory joinder, which is what we are dealing with here, the conspiracy charge was committed in, among other places, Denver, and ... since an overt act, i.e., the transfer of cocaine to Pobar, occurred in Denver, then the conspiracy charge and the distribution charge for that matter could have been filed in Denver. So the Court would find that the first requirement [of the compulsory joinder statute] is satisfied.

This ruling is erroneous. Instead of emphasizing the Denver situs of the conspiracy charge as the basis for applying the compulsory joinder bar, the court should have considered whether the Denver charges were committed in the same judicial district (namely, the Fourteenth Judicial District) as that in which the defendant had been previously subjected to a completed prosecution for conspiracy and thus

6. Crim.P. 18(b) expands somewhat on this statutory provision of section 16–6–103 by authorizing a change of venue to another county within the same judicial district "if it is shown that the offense was also committed *or an act in furtherance of the offense* occurred in the county where the case is to be transferred." (emphasis added.)

7. Nothing in our interpretation of section 18–1–202(7), 8B C.R.S. (1986), is intended to preclude a defendant from moving for a change of venue as to all offenses committed in different counties within the same judicial district to the other county where one of the offenses occurred for trial of all offenses in that county. Nor does our interpretation prevent a defendant from foregoing the benefits of a unitary prosecution by moving for a change of venue as to an offense committed in a different county within the same judicial district to that other county for trial on that offense only. In those instances where a defendant is charged in different judicial districts with separate offenses arising out of the same criminal episode but occurring in separate counties located in the respective judicial districts in which the charges were filed, there is nothing in the statutory venue scheme that precludes the defendant from requesting a change of venue to a judicial district in which other charges arising out of the same criminal episode are pending, thereby furthering the interests of judicial economy and alleviating the burdens incident to sequential prosecutions. Such motions, of course, are addressed to the sound discretion of the court.

could have been filed in the prior prosecution by the district attorney serving that judicial district.

When the focus shifts to whether the district attorney for the Fourteenth Judicial District had authority to charge the defendant in the Routt County District Court with the very same offenses filed against the defendant in the Denver District Court—possession of a schedule II controlled substance and possession of more than eight ounces of marijuana—it becomes clear that the Denver offenses do not qualify for the compulsory joinder bar of section 18-1-408(2). Indeed, the district court noted in its ruling that the Denver charges were committed in Denver and nowhere else. This fact rendered the district attorney for the Fourteenth Judicial District powerless to join the Denver possessory charges in the Routt County prosecution since these offenses were not committed in the judicial district served by that district attorney.

Although the conspiracy charge involved overt acts committed in both Denver and Routt County and thus could have been filed in either the Second Judicial District or the Fourteenth Judicial District, §§ 18-2-202(2)(a) and 18-1-202(8), 8B C.R.S. (1986), the venue for the conspiracy charge is not in any way determinative of whether the District Attorney for the Fourteenth Judicial District could have filed the Denver possessory offenses in the Routt County prosecution. Since the situs of the Denver possessory offense was exclusively in Denver, those offenses could not have been charged against the defendant in the Routt County prosecution notwithstanding the fact that the situs of the conspiracy for purposes of venue was in both Denver and Routt County. Thus, when the defendant pled guilty in the Routt County District Court to the conspiracy charge and subjected herself to a single completed prosecution, the compulsory joinder bar of section 18-1-408(2) had no effect whatever on the viability of the Denver charges.[8]

The judgment of dismissal is accordingly reversed and the cause is remanded to the district court for further proceedings.

---

8. There is another reason why the Denver charges were improperly dismissed. When we actually examine whether the Denver offenses were part of the same criminal episode as the criminal charges filed in the Routt County District Court, we are satisfied that the Denver crimes were not part of the Routt County episode. The Routt County charge of distribution of cocaine was based on Pobar's sale of cocaine to Agent Peters on June 19, 1984, in Steamboat Springs, and the defendant's criminal liability for that crime was her complicity in aiding Pobar in committing that act by supplying him with the cocaine ultimately sold to the undercover agent. See § 18-1-603, 8B C.R.S. (1986). The crime of distribution of cocaine was completed on the evening of the sale, June 19, 1984. Although there were several overt acts committed in Denver with respect to the conspiracy charge, such as the defendant's act of supplying Pobar with cocaine on June 19, 1984, the venue for the conspiracy charge filed in the Routt County District Court was based on Pobar's act, as per his agreement with the defendant, in bringing the cocaine into Routt County and in distributing it to the undercover agent at Steamboat Springs. By law, a conspiracy terminates when the crime which is the object of the conspiracy is committed. § 18-2-204, 8B C.R.S. (1986). Since Pobar's sale of the cocaine and his arrest took place several hours prior to the execution of the search warrant for the defendant's home and the seizure of drugs in her home, which seizure constituted the factual basis for the Denver charges, it is quite obvious the Denver possessory crimes on June 20, 1984, were separate and distinct from the criminal episode that occurred in Routt County. See generally Corr v. District Court, 661 P.2d 668 (Colo.1983). The Denver possessory offenses were not based on conduct that was significantly proximate in time or place to the Routt County offenses. Nor, in our view, can the Denver offenses be reasonably considered an integral part of the criminal scheme on which the Routt County charges were based.